United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 6, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-31129

AMERICAN EMPLOYERS' INSURANCE CO, a Massachusetts Corporation;
ONEBEACON AMERICA INSURANCE COMPANY, as Successor to Commercial
Union Insurance Company and Employers Commercial Union Insurance
Company a Massachusetts Corporation

Plaintiffs-Appellants,

versus

EAGLE INC, a Louisiana Corporation, formerly known as Eagle
Asbestos & Packing Company,

Defendant-Appellee.

--------------------
Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans
03-CV-2224
--------------------

Before BENAVIDES, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Appellants American Employers' Insurance Co. and OneBeacon
America Insurance Co. appeal the district court's order granting
Appellee Eagle, Inc.'s motion to stay Appellants' declaratory
judgment action and denying Appellants' motion for summary
judgment.  We affirm the district court's order in both respects.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

## I. INTRODUCTION

This action arises from an insurance coverage dispute. In the past several years, thousands of lawsuits have been filed against Eagle, Inc. ("Eagle") by individuals alleging bodily injuries as a result of exposure to asbestos from insulation products allegedly sold and installed by Eagle. Appellants American Employers' Insurance Co. ("American Employers") and OneBeacon America Insurance Co. ("OneBeacon") issued general commercial liability policies to Eagle from 1959 to 1976. The parties now disagree about the extent to which the insurance policies cover the asbestos claims against Eagle. On January 7, 2003, after several months of negotiation, Appellants sued Eagle in federal court for a declaratory judgment. In May 2003, Eagle filed a third-party demand against Appellants in one of the state court asbestos actions. In addition, numerous individual plaintiffs have brought direct actions against Appellants in state courts.

## II. FACTS AND PROCEEDINGS

Eagle is a defendant in approximately 2,000 personal injury lawsuits filed in Louisiana and other state courts on behalf of approximately 12,000 claimants for bodily injuries allegedly resulting from the sale and installation of defective asbestos-containing insulation. Eagle purchased comprehensive general liability insurance from American Employers from 1959 to 1968 and from OneBeacon from 1968 to 1976. The insurance policies have

two relevant components: (i) general liability or "premises/operations coverage" and (ii) products hazard/completed operations coverage.[1]  The basic dispute is over which claims resulting from the asbestos lawsuits filed against Eagle, if any, can be allocated to the products hazard/completed operations part of the policies.

The products hazard/completed operations provisions encompass injuries caused by Eagle's products after Eagle has relinquished possession of the product, or by Eagle's operations, if the injury occurs after the operations have been completed and after Eagle has left the jobsite.

The general liability portion of the policies covers, among other things, injuries that occur as a result of exposure during installation.

The products hazard/completed operations coverage under the policies is subject to certain monetary per-occurrence limits, as well as yearly aggregate limits.  The general liability coverage under the policies, by contrast, has no such limit.

Because of the insurance coverage dispute, American Employers has refused to defend Eagle in the personal injury lawsuits, or to indemnify Eagle for any claims.  OneBeacon, along

---

[1] Prior to the introduction of comprehensive general liability ("CGL") insurance policies in 1941, the insured had to buy insurance for each particular risk individually.  However, CGL policies shifted the burden of deciding what to insure and what not to insure from the insured to the insurance company.  CGL policies insure against all risks, subject to exceptions.  In the instant case, the exception at issue is the exception for products hazard and completed operations.

with other insurers, entered into an Agreement for Defense and Indemnification of Asbestos Bodily Injury Claims Pending Against Eagle, Inc. in 1996. Since that time, OneBeacon has allocated all claims against Eagle to the products hazard/completed operations provision of the policies. In the summer of 2002, OneBeacon informed Eagle that the coverage offered under its policies for products hazard/completed operations had been exhausted and that OneBeacon would no longer defend or indemnify asbestos claims against Eagle.

After OneBeacon informed Eagle of its position that coverage had been exhausted, the parties engaged in lengthy settlement negotiations. When those negotiations proved fruitless, Appellants filed an action in federal court for declaratory relief.

Appellants filed a motion for partial summary judgment on two issues. First, Appellants asked the district court to determine whether any liability for indemnity and defense costs should be determined on a pro-rata basis determined by the usual exposure during the policy periods as compared to the total years of exposure. Second, Appellants asked the court to determine whether certain claims asserted by the Appellants fall within the completed operations and products hazards provisions of the policies.

In response to Appellants' motion, Eagle filed a motion to dismiss or, in the alternative, to stay the declaratory judgment

action.

The district court denied Appellants' motion for partial summary judgment and granted Appellee's motion to stay the action. The district court held that the insurance coverage issues should be decided in the state court proceedings that will also address the merits of individual claims, the fault of the parties, and the assessment of damages. Additionally, the district court held that Appellants bore the burden of proving that the products hazard/completed operations limits have been exhausted. Because Appellants had not submitted any evidence demonstrating that they had properly allocated the underlying claims, the district court denied Appellants' request for a judgment that certain claims fall within the products hazard/completed operations provisions of the policies.

### III. Discussion

A. District Court's Order to Stay

We review a district court's decision to dismiss or stay a federal declaratory judgment action under an abuse of discretion standard. *The Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003).

Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), a district court "may declare the rights and other legal relations of any interested party seeking such declaration." However, the district court is not compelled to exercise that jurisdiction. *Brillhart v. Excess Ins. Co. of America*, 316 U.S.

491, 494 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995). The basic question for the district court is "whether the questions in controversy between the parties to the federal suit ... can better be settled in the proceeding pending in state court." *Brillhart*, 316 U.S. at 495.

In *St. Paul Insurance Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994), we set forth seven factors for a court to apply to determine whether or not it should exercise jurisdiction. In *Sherwin-Williams*, we recognized that the *Trejo* factors address three broad considerations - federalism, fairness/improper forum shopping, and efficiency. *Sherwin-Williams*, 343 F.3d at 390-91.

With respect to federalism considerations, we said in *Sherwin-Williams*: "[I]f the federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending, generally the state court should decide the case and the federal court should exercise its discretion to dismiss the federal suit." *Id*. In the instant case, the dispute involves the interpretation of an insurance contract and interpretation of state insurance law as it relates to asbestos claims, both of which are state law matters. Furthermore, the parties are involved in numerous state court actions involving the same state law issues. Eagle has filed third-party demands in several state court lawsuits. In addition, Appellants have been named as defendants in several of the state court lawsuits. Thus, considerations of federalism

support the district court's decision to stay Appellants' federal declaratory judgment action.

With respect to fairness considerations, in *Sherwin-Williams* we recognized that the mere act of filing a federal declaratory action in anticipation of a state lawsuit is not, in and of itself, impermissible. Rather, we were concerned with whether there was a legitimate reason to be in federal court. *Id*. at 397-99. In *Sherwin-Williams*, we held that the selection of a federal forum was not impermissible for at least four reasons. First, a desire to avoid multiple lawsuits in multiple courts is a legitimate reason to want to be in federal court. Second, Sherwin-Williams' desire to avoid plaintiff-friendly state court juries was not illegitimate, because Sherwin-Williams was an out-of-state company. The traditional justification for diversity jurisdiction is to ensure fairness for out-of-state litigants. Third, the selection of a federal forum would not change the applicable law because state law would apply in either case. Fourth, there was no evidence that the defendant in the declaratory judgment action had been restricted from filing a state court action prior to the plaintiff filing the declaratory judgment action. *Id.* at 399.

In the instant case there are many similarities with *Sherwin-Williams*. Appellants here did file in federal court in anticipation of involvement in a state court lawsuit, but they do not seem to have done so for improper purposes. As in *Sherwin-*

*Williams*, Appellants in the instant case are seeking to avoid multiple lawsuits in multiple courts to determine the same issues. Also, as in *Sherwin-Williams*, Appellants here are out-of-state corporations attempting to avail themselves of the traditional justification for diversity jurisdiction. Third, as in *Sherwin-Williams*, state law will apply in a state court action or in a federal declaratory action. And finally, there is no evidence that Appellee could not have filed a state court action.

Thus, with respect to fairness considerations, Appellants did not engage in improper forum shopping, nor did they act unfairly with respect to Appellee by filing a federal declaratory judgment action.

With respect to efficiency, the third *Sherwin-Wiiliams* consideration, Appellants claim that it would be more efficient for one federal court to determine all of the issues between the parties than for various state courts to decide the issues in a piecemeal fashion. However, this supposed efficiency gain would not actually be realized because a federal court cannot rule conclusively on the disputed issues at this time.

Appellants have five issues for which they request declaratory judgment. Resolution of each of the five issues requires a determination of state law and/or resolution depends on the factual circumstances of the underlying asbestos claims. Thus, a federal court would not be able to conclusively resolve the dispute between the parties involving these issues, and it

would not be more efficient for a federal court to initially hear the claims.

In sum, the application of the considerations we identified in *Sherwin-Williams* supports the district court's order to stay Appellants' federal declaratory judgment action. Therefore, we find that the district court did not abuse its discretion by granting Eagle's motion to stay Appellants' declaratory judgment action.

## B. District Court's Denial of Motion for Summary Judgment

Appellants ask us to consider the merits of their motion for partial summary judgment despite the fact that the district court's denial of that motion is not a final order. *See Ardoin v. J. Ray McDermott & Co.*, 641 F.2d 277, 278 (5th Cir. 1981) (denial of summary judgment motion is an interlocutory order and unappealable). This Court generally does not have jurisdiction to review a district court's denial of a motion for summary judgment because such a ruling is not a final one within the meaning of 28 U.S.C. § 1291. *Lemoine v. New Horizons Ranch and Ctr., Inc.*, 174 F.3d 629, 633 (5th Cir. 1999).

Appellants do not provide any compelling reason for us to make an exception to the general rule that only final orders are appealable.

Accordingly, we find that the district court's order denying Appellants' motion for partial summary judgment is not an appealable order.

## IV. Conclusion

For the foregoing reasons, the district court's order is AFFIRMED.